## CLAIM FOR SERVICES RENDERED BY A MEMBER OF THE FAMILY.

### Circuit Court for Lucas County.

#### CHARLES A. BROWN v. HARRIET E. FARR.

##### Decided, February 10, 1912.

*Pleading—Defects in, Not Fatal to Recovery of Judgment, When— Indentured Girl Seeks to Recover for Services Rendered After She Reached Her Majority—Contracts Express and Implied—Proof Upon Which Contract Must Rest—Charge of Court.*

1. A judgment will not be reversed solely by reason of a defect in the petition in failing to aver that the amount claimed is due, where issues have been joined and the cause tried on its merits and it appears from the record that the defective petition did not result in prejudice to the adverse party.

2. Where it is clearly apparent that the plaintiff was led to sign the release relied upon by the defendant through a misunderstanding as to its character, or it appears that the instrument signed was

a mere *nudum pactum,* it is not necessary to set the instrument aside by a separate action nor to demand a cancellation of such release by a separate cause of action.

3. No contract to pay for services can be implied where a family relationship existed between the parties, but such a contract must be established by clear and unequivocal proof; and this rule is as applicable to an action against the head of a family during his lifetime as against his administrator after his death.

*Ray & Cordill,* for plaintiff in error.
*James H. Southard,* contra.

Richards, J.; Wildman, J., and Kinkade, J., concur.

Error to the Court of Common Pleas of Lucas County.

The original action in the court of common pleas was brought by Harriet E. Farr to recover of Charles A. Brown upon two causes of action set forth in her petition. In the first cause of action she claimed a balance of $5.50 upon a promissory note executed by Brown to her. In the second cause of action, she claimed a sum of about $750 for services claimed to have been rendered by her to Brown.

It appears from the evidence that Harriet E. Farr had been an inmate of the Children's Home near Maumee, and that she was indentured to Brown until she was eighteen years of age, at which time he was to pay her the sum of $50, and that she continued to reside in the family of Brown as a member thereof for some years after she became of age. Upon her arriving at the age of eighteen he executed to her a note in the sum of $50 upon which he subsequently paid $10, and upon September 25, 1909, he paid to her the sum of $44.50. The trial in the court of common pleas resulted in a verdict and judgment in her favor in the sum of $313.50. At the time the payment of $44.50 was made, she signed an instrument which she delivered to Brown, reading as follows:

"Swanton, Ohio, September 25, 1909.

"Received of Charles A. Brown the sum of fifty ($50.00) dollars, the same being in full payment and settlement of note given by him to me of date of March 26, 1908, and said sum is also in full payment of any and all claims of every kind and description which I have against him.

"Miss Harriet E. Farr."

Miss Farr alleges in her reply after quoting the above instrument that the defendant desired to settle the balance of the note and that he represented to her that he had seen her attorney and that her attorney sent word that she should accept the balance due on the note, and that she should sign the said paper. She avers that Brown said to her that said paper receipt related to, covered and was intended to settle said note, and such matters as grew out of their indenture agreement and nothing else, and that a receipt was necessary because the note was lost. She further avers that it was not true that her attorney had directed that she should sign the paper, but that he had sent no directions whatever, and that she was induced to sign the instrument through the false and fraudulent representations of said defendant, communicated to her as just stated.

Upon the impaneling of a jury in the common pleas court, the defendant below objected to the introduction of any testimony for the reason that the pleadings showed that there was a settlement between the parties and a contract of settlement entered into and set up in the answer and admitted in the reply, and that this contract must stand until set aside by a court of equity. The defendant upon the overruling of that motion, further moved the court for judgment on the pleadings which motion was also overruled, and exception taken to the action of the court upon both motions.

The petition contains no averment that the amount of $5.50 which is claimed upon the promissory note was due; neither is it averred in the petition that the amount claimed in the second cause of action for services was due, but the second cause of action does contain the averment that the defendant is indebted to her upon the claim therein set forth. The reply contains an averment that she had presented to Brown a statement of the amount due her for services and that he was not disputing that she was entitled to receive from him the amount due on the note.

In view of these allegations and of the language of the Supreme Court in *Yocum v. Allen*, 58 O. S., 280, and also in the case of *Dayton Insurance Co. v. Kelly*, 24 O. S., 345, we think that the judgment ought not to be reversed by reason solely of the defects in the pleadings just stated, and that the action of the

court in that respect was not such prejudicial error as to require a reversal.

It is insisted, however, that the instrument quoted above, if its validity is to be questioned at all, should be questioned by appropriate allegations contained in the petition rather than in the reply. The instrument itself is plainly in form something more than a receipt and amounts, without doubt, to a contract as well as a receipt. See *Jackson* v. *Ely*, 57 O. S., 450; *Cassilly* v. *Cassilly*, 57 O. S., 582. The rule by which it is to be determined whether an instrument of the character set forth must be assailed in the petition, or whether it may be sufficient to set it up in the reply, depends upon whether it is a void instrument or one which is voidable only. The principle of law controlling is laid down by the Supreme Court in *Perry* v. *O'Neil & Co.*, 78 O. S., 200. A careful examination of the language of the reply leads to the conclusion that if Miss Farr believed the statements to be true, she was led to sign the instrument because she believed it was one of a different character from the one which it was in fact. It is perfectly apparent that she is not a woman of the keenest business sagacity, and that she acted upon the supposition that the instrument was nothing other than a receipt for the amount due upon the note. Such being the case, the instrument would be absolutely void and it would not be necessary to set the same aside either by a separate action or by a separate cause of action in this case, before maintaining an action to recover the amount claimed by her.

An additional reason exists which is sufficient to justify us in reaching that conclusion. The amount actually paid was $44.50 and beyond all question, at least that amount remained due upon the promissory note and was not in any way in dispute between the parties. It was a liquidated sum and nothing having been paid upon the promissory note, in addition to the amount conceded, no consideration existed for a release of the amount claimed to be due for services. The instrument, therefore, in so far as it purports to be more than a receipt, would be absolutely void. It would be what lawyers term a *nudum pactum*. See *Seeds, Grain & Hay Company* v. *Conger*, 83 O. S., 169. We find no prejudicial error to have been com-

mitted by the trial court in overruling the motions made by the defendant below for judgment upon the pleadings and for the exclusion of all evidence.

Upon the trial of the case a large amount of evidence was introduced pertaining to the relations existing between the plaintiff below and the family of Charles A. Brown, and to the services performed by her. From the evidence, it appears that from the time she went to live in the family, she continued to reside in the family as a member thereof. She alleged in her reply that she had lived in the family since childhood and that the defendant had occupied the position of a father toward her. The case as made by the allegations contained in the second cause of action, and the pleadings subsequent thereto is one where during the existence of a family relation one member has performed services for the head of the family, and seeks to recover therefor. In the general charge of the court, we find this language:

"The burden is upon the plaintiff as to both causes of action, to prove by a preponderance of the evidence the allegations of her first and second causes of action before she can recover upon them.    *    *    *    Before she can recover on the second cause of action, she must prove that there was an agreement between herself and defendant, either express or implied, that she should perform services and that she should be paid for such services."

In view of the circumstances shown by the evidence in this case as to a family relationship existing between the parties to the case, it was manifest error to instruct the jury as was done in the language above quoted. It has long been the established rule in cases of this character that no contract to pay for services rendered would be implied, and that before a recovery can be had, it must appear from the evidence that an express contract to perform the services and to pay for the same existed. The language quoted would authorize a recovery in the absence of an express contract. Again, the instruction permits a recovery if the plaintiff's case on the second cause of action is established by a preponderance of the evidence only. This language is in direct conflict with the rule laid down by the Supreme Court in *Hinkle* v. *Sage*, 67 O. S., 256, 262. In the case cited the principle

is announced by our Supreme Court that to entitle a plaintiff to recover under such circumstances, the contract must be established by clear and unequivocal proof. It is true that the case of *Hinkle* v. *Sage* was an action brought against the estate of a decedent, and in that respect it differs from the case now under consideration. But the language used by the court in the course of the opinion, and also as found in the syllabus is so broad as to embrace an action of this character, whether brought against an executor or administrator or against the head of a family during his lifetime. Were it not for this general language, the members of this court might not be agreed that the rule requiring the plaintiff's case to be established by clear and unequivocal proof should be applied except when the action is against the estate of a deceased person. Much argument may be adduced upon both sides of the question, but we are convinced, in view of the language of this decision, that the rule in our state is equally applicable whether the action be against an administrator or between members of a family still living. A very interesting discussion of this and some other questions may be found in an exhaustive note contained in 11 Lawyers Reports Annotated (New Series), 873-913. Speaking of the degree of proof required the annotator upon page 902 states the rule as follows:

"The emphatic language used is probably to be accounted for, in some measure at least, by the fact that, in the great majority of instances, it was used with relation to claims against the estates of decedents. But, as the statements of the courts are perfectly general, it can not be assumed that the standard specified was regarded as being appropriate only in cases involving such claims."

For the error indicated, prejudicial to the rights of the plaintiff in error, the judgment will be reversed and the cause remanded for further proceedings.