[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 383 
IN BANC.
The plaintiff brought this suit to enjoin the defendant City of Portland from appropriating certain of her lands for the purpose of widening East Broadway and East Larrabee Streets as approaches to the Broadway bridge spanning the Willamette River.
In the proceedings to condemn plaintiff's real property, her damages were determined to be $13,550, and the benefits inuring to her were fixed at $450. She does not complain as to the assessment of benefits, but she avers that the appropriation of her *Page 384 
property by the city would damage her in the sum of $18,000. Plaintiff admits that the city, in its attempt to exercise the right of eminent domain, is proceeding in conformity with its charter, but she attacks the right of the city to condemn her land other than by the method authorized by Oregon Laws, Section 7088, and the special condemnation procedure for cities as prescribed by Oregon Laws, §§ 7108-7112, and bases her objections to the proceeding had upon the ground "that it constitutes a taking of plaintiff's property without due process and without just compensation."
The cause comes here from a final judgment entered upon the overruling of plaintiff's demurrer to the defendant's answer. The plaintiff assigns error of the court, first, in overruling plaintiff's demurrer and dismissing her complaint; second, in holding that the Circuit Court had jurisdiction to review plaintiff's damages; third, in holding that the City of Portland conferred jurisdiction upon the Circuit Court by a charter amendment; fourth, in holding that the condemnation proceedings under the charter constituted due process.
Among other things, the charter under which the city is proceeding provides:
"Section 322. Whenever the council shall deem it expedient to lay out, establish and open any new street or streets, or to change any existing street or streets by extending, widening or altering the same, it shall by resolution direct the city engineer to make a survey and plat of such proposed street or streets, or change thereof, and a written report. The city engineer shall make such survey, plat and report, and file such plat and report with the auditor within sixty days from the date of such resolution, unless the council shall grant an extension of time. Such report shall contain a full description of such proposed street or streets, or change of an existing street or *Page 385 
streets, a description of each lot, tract or parcel of land, or portion thereof, to be appropriated, the amount of damages which, in his judgment, should be awarded for such appropriation, with the name of the owner or owners and other persons whom he may find to have any interest in or lien upon said property, a description of the boundaries of the district benefited and to be assessed for such improvement, and a description of each lot, tract, or parcel of land (other than land taken) in such district with a just assessment of benefits thereto. The city engineer shall include in such report a summary showing the excess of benefits and excess of damages relative to lots, tracts or parcels of land a part of which is embraced within such proposed street or streets or change, which damages and benefits may be offset pro tanto. The engineer's report shall be deemed a proposed award of damages and assessment of benefits.
"Section 323. Within thirty days after the filing of such report the auditor shall cause a notice to be published for a period of ten successive publications in the city official newspaper, stating that such report is on file in his office subject to examination, giving the date when the same was filed, the probable cost of such proposed street or streets or change, a statement of the district embracing the property proposed to be assessed therefor and notifying all persons interested to present in writing their objections to said report, if any they have, and that said objections, if any there be, together with said report, will be heard by the council on a date specified in such notice, not less than ten (10) days after the date of the first publication of said notice. It shall also be the duty of the auditor forthwith to send by mail postpaid to each of those designated in the engineer's report a notice stating the probable total cost of such street or streets, or change, a brief description of the property in which such person is interested, a statement of the amount proposed to be assessed against such property, the time within which written objections may be filed against such proposed *Page 386 
appropriation and assessment, and the date when the council will hear such report and objections, and, if such person be named as owner or party interested in land to be taken, the amount of damages proposed to be awarded for such property. If the address of any such person be unknown to the auditor and if such person have an agent whose name and address is known to the auditor, he shall mail such notice to such agent; otherwise, he shall mail it to the owner addressed at Portland, Oregon.
"Section 324. If the council, after hearing the objections, if any there be, find such report to be reasonable and just, it may adopt the same by ordinance, embodying such report. If it appear to the council that the damages allowed or benefits assessed are unreasonable, unjust or improper in any respect, it shall make what it may deem to be a reasonable, just and proper award of damages and assessments of benefits, and for that purpose it may require a supplementary or further report from such city engineer. When the council after such hearing shall have ascertained what it deems to be a fair, just and proper award of damages and assessment of benefits, it may pass an ordinance specifying in detail such award and assessment, which ordinance may be passed at any time after the hearing hereinbefore specified. But if the council deem it just and proper to reduce the amount of any award embraced in the engineer's report or increase the amount of any proposed assessment against any parcel of land embraced in said engineer's report, it shall fix a time for a further hearing and shall cause the auditor to mail a notice to the owner of each parcel of land so affected, stating what is proposed in the way of an award of damages or an assessment with respect to the property in which such person is interested, the time within which objections may be filed in writing with the auditor and the time when such objections will be heard by the council. After holding such hearing the council may pass an ordinance making an award of damages and assessment of benefits. No findings or conclusions need be entered relative to objections. *Page 387 
"Section 325. The owner or owners of any lot, tract or parcel of land, all or part of which is to be appropriated for a street, streets, or change, the owner of the improvements thereon, any person having an interest in such land or improvements, and any person against whom an assessment of benefits is made by such ordinance, shall have a right of appeal, within the same time, in the same manner, and with the same force and effect as is provided by Sections 401 and 402 of the 1903 charter of the City of Portland, which sections are contained on pages 163 and 164 of the Special Laws of Oregon for the year 1903. * *
"Section 326. The council, after the expiration of the time limited for an appeal to the circuit court, * * shall, if it deem it advisable to lay out * * such street, * * adopt a resolution directing the auditor to enter in the docket of city liens a statement of the respective amounts of benefits assessed upon each particular lot * * in like manner as assessments * * are entered in said lien docket.
"In cases where a part of a lot or tract of land is taken for such street * * and an award made for the part taken, and an assessment made against the residue, credit shall be made so that if the award exceed the assessment, the assessment shall be canceled and the balance of the award paid to the owner, and if the assessment exceed the award the amount of the award shall be applied on the assessment. * * All moneys arising from such assessments of benefits shall be kept in a separate fund and shall be applicable to a satisfaction of the amount to be paid for damages * *.
"Section 328. If such fund for the payment of damages be not collected and ready for the drawing of warrants within nine (9) months from the termination of the time limited for appeal, * * or within nine (9) months from the date of the rendition of final judgment on appeal, * * all acts and proceedings for the laying out, establishing, opening, or changing of such street or streets shall be null and void But in case of two or more appeals being *Page 388 
taken, the time shall start to run from the date of the final judgment which is last."
The next two sections relate to proceedings upon the determination of an appeal.
AFFIRMED.
Eminent domain is the offspring of necessity. Public necessity, or urgent public policy, is the only justification for seizing the property of a law-abiding citizen against his will. In all cases of this character, the law not only requires a sufficient procedure for condemnation, but likewise demands that such procedure be strictly pursued. Further, the acts conferring the power of eminent domain upon a corporation must be strictly construed in favor of the person whose lands are about to be taken against his will. This is so because the power to condemn is in derogation of common right: 20 C.J. 534.
This case affords an illustration of the assertion of the right of eminent domain, a sovereign power of the state, by one of its municipal corporations, to which that power has been delegated. In the exercise of this delegated right, the defendant herein has seized the private lands of plaintiff for public purposes, without her consent and against her will.
That the conditions established by the charter for the widening of the street were observed is admitted. But, says the plaintiff, while you have conformed to all the conditions imposed by the charter in proceeding to condemn my land for a public highway, *Page 389 
this does not constitute due process of law, because there is no provision therein for an appeal from the award of damages. However, we believe that, if all parts of the charter pertinent to this issue are read and construed together, it will be apparent from the language employed therein that the body enacting the same intended to, and did, provide for an appeal, both from an award of damages and of benefits. Further, it is our duty, in determining the question raised by plaintiff involving the validity of the charter provisions, to bear in mind the maxim of statutory construction that, if reasonably possible, a statute should be so construed as to render it valid: Calder v. Orr,105 Or. 223 (209 P. 479, and local citations there noted). From a careful study of the charter provisions in the light of the statutory rules of construction, we are of opinion that the charter provides for a hearing before a competent tribunal in condemnation proceedings, and that it affords the land owner an appeal to the Circuit Court from the awards made by the tribunal composed of city officials.
Every law is to be interpreted according to the intention of the legislature as it appears from the words of its enactment:United States v. Fisher, 109 U.S. 145 (27 L.Ed. 885,3 Sup. Ct. Rep. 154, see, also, Rose's U.S. Notes). For this reason, we have pointed to the intention expressed in the act.
It is a familiar rule that the various parts of a statute should be read so that all may, if possible, have their due and conjoint effect without repugnancy: Twohy Bros Co. v. OchocoIrr. Dist. et al., 108 Or. 1 (210 P. 873, 216 P. 189);United States v. New York Steam Fitting Co., 235 U.S. 327
(59 L.Ed. 253, 35 Sup. Ct. Rep. 108, see, also, Rose's U.S. Notes). Applying this principle to the *Page 390 
case at bar, all pertinent provisions of the charter on which the defendant based its proceedings must be read and considered.
Another matter of consequence in determining the question before us is the fact that the provisions of the charter involved herein have for a number of years, and upon numerous occasions, been construed by the officials charged with their execution. In such cases, condemnation proceedings have been had, as here, and appeals have been taken therefrom and heard in the Circuit Court. The validity of the charter provisions are now assailed for the first time. In this the plaintiff is well within her lawful rights. But is well settled "that the contemporaneous construction of a statute by those charged with its execution, especially when it has long prevailed, is entitled to great weight, and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous." United States v. Josnston, 124 U.S. 236
(31 L.Ed. 389, 8 Sup. Ct. Rep. 446, see, also, Rose's U.S. Notes). To like effect, see Logan v. Davis, 233 U.S. 613 (58 L.Ed. 1121,34 Sup. Ct. Rep. 685); Boston etc. R. Co. v. Hooker, 233 U.S. 97
(58 L.Ed. 868, Ann. Cas. 1915D, 593, L.R.A. 1915B, 450,34 Sup. Ct. Rep. 526).
On the contemporary exposition of a statute, see the following decisions by this court: Biggs v. McBride, 17 Or. 640
(21 P. 878, 5 L.R.A. 115); McQuaid v. Portland V. Ry. Co.,18 Or. 237 (22 P. 899); Kelly v. Multnomah County, 18 Or. 356
(22 P. 1110); Shattuck v. Kincaid, 31 Or. 379
(49 P. 758).
Again, a contemporaneous construction ought not to be overruled without cogent reasons: United States v. Pugh, 99 U.S. 269
(25 L.Ed. 323, see, *Page 391 
also, Rose's U.S. Notes). And, in a case of doubt, it ought to turn the scale: Brown v. United States, 113 U.S. 571
(28 L.Ed. 1080, 5 Sup. Ct. Rep. 648, see, also, Rose's U.S. Notes).
Recurring to plaintiff's assertion that the charter gives her no right of appeal: Nothing is better settled, in this jurisdiction, than the rule of law that an appeal is not a matter of right, but a statutory privilege; and the party who would enjoy such privilege must show the law conferring it upon him:City of Portland v. Nottingham, 58 Or. 1 (113 P. 28);Salem King's Products Co. v. La Follette, 100 Or. 11
(196 P. 416). However, it is a canon of construction that statutes conferring the right of appeal are remediable in character and should, therefore, be liberally construed; and if, from its language, such an act is fairly susceptible of more than one construction, it should be construed in favor of the right of appeal: 2 Lewis, Eminent Domain, § 535.
Statutes giving appeals are liberally construed so as to embrace condemnation proceedings, if possible: Howard v.Drainage Commrs., 126 Ill. 53 (18 N.E. 313); Yelton v.Addison, 101 Ind. 58; 1 Elliott, Roads and Streets (3 ed.), § 412.
"In such cases the statutes should be liberally construed in favor of the right, and every reasonable intendment made in favor of its existence. The power of seizing property is a high one, and the assessment of benefits and damages often involves very important and difficult questions, and it should not be held, where it can be avoided, that the decision of the tribunal of original jurisdiction cannot be appealed from, since it ought not to be presumed that the legislature meant to place the decision of a tribunal of the rank of those to which original jurisdiction is usually given beyond review by higher courts. The reasonable presumption is that it was not the legislative intention to cut off the right of *Page 392 
appeal. In conformity to these views we find the courts generally favoring the right of appeal, and extending the statutes as far as it is in their power to do so in order to secure and preserve the right." 1 Elliott, Roads and Streets (3 ed.), § 412.
The charter enacted in 1903 containing no expressed intention to the contrary, it is presumed to be the intent of the legislative body that that charter was enacted for all time: 26 Am. Eng. Ency. of Law (2 ed.), 715. The right of appeal embraced therein has never been withdrawn. That privilege conferred by statute remains in full force and effect to this day. True, under the city's constitutional power, its charter provisions have been amended, repealed and re-enacted; but the right of appeal to the Circuit Court, conferred by the law-making body of this state, has never been surrendered or recalled.
What is the effect of a repeal and re-enactment of the same provisions of a law, fundamental or statutory?
"If the new instrument (constitution) re-enacts in the same words provisions which it supersedes, it is a reasonable presumption that the purpose was not to change the law in those particulars, but to continue it in uninterrupted operation. This is the rule in the case of statutes." Cooley's Constitutional Limitations (7th ed.), pp. 96, 97.
Again: "Where there is an express repeal of an existing statute, and a re-enactment of it at the same time, or a repeal and a re-enactment of a portion of it, the re-enactment neutralizes the repeal so far as the old law is continued in force. It operates without interruption where the re-enactment takes effect at the same time. * * Offices are not lost; corporate existence is not ended; inchoate statutory rights are not defeated; a statutory power is not taken away, nor pending proceedings or criminal *Page 393 
charges affected by such repeal and re-enactment of the law on which they respectively depend." 1 Lewis' Sutherland Statutory Construction (2 ed.), § 238.
In practical operation and effect, the new act is to be considered as a continuance of the old: 36 Cyc. 1084, and decisions under note 76. Hence, jurisdiction by the Circuit Court to hear this case upon appeal arises from the Constitution and the statutes passed in pursuance thereof: Or. Const., art. VII, § 9; Dippold v. Cathlamet Timber Co., 98 Or. 183
(193 P. 909); 7 R.C.L., p. 1030.
The objection that Section 325 of the charter, as amended to read that an appeal shall be taken "within the same time, in the same manner, and with the same force and effect as is provided by Sections 401 and 402 of the 1903 charter of the City of Portland," limits the appeal to the question of assessments, is not well taken. There may be ground for argument in support of plaintiff's contention. But, upon a consideration of the various charter provisions pertaining to the matter of laying out, establishing and widening streets, together with the reference therein to damages upon appeal, it is apparent that the land owner, in all such cases as the one at issue, has the right of appeal to the Circuit Court from an assessment of damages. We have already adverted to the force of contemporary construction and the rules of interpretation in such causes on appeal. But, as to the meaning of the term "force and effect," on appeal, as used in the charter, see 3 C.J., p. 1261. The term as here employed is not one of limitation of the matter to be reviewed upon appeal. *Page 394 
In the event that the appellate procedure in the matter of eminent domain is not included in the statutory provisions, the general rules of practice in similar cases are adopted: 1 Smith, Modern Law of Municipal Corporations, § 724; 1 Elliott, Roads and Streets (2 ed.), § 362; 2 Lewis, Eminent Domain (2 ed.), § 540. However, the enactment of Chapter 294, Laws of 1925, now effective, has removed all doubt involving appellate procedure.
This cause should be affirmed. It is so ordered.
AFFIRMED.
BEAN and BURNETT, JJ., dissent.
RAND and COSHOW, JJ., took no part in the consideration of this case.