Argued March 4, reversed March 25, petition for rehearing
denied April 29, 1953

# EWAUNA BOX CO. ET AL. v. WEYERHAEUSER TIMBER COMPANY

255 P. 2d 121

*Richard B. Maxwell,* of Klamath Falls, argued the cause for appellant. On the brief were Farrens & Maxwell, of Klamath Falls.

*William Ganong,* of Klamath Falls, argued the cause for respondents. On the brief were Ganong & Ganong, of Klamath Falls.

PERRY, J.

This is an action at law which was tried by the court sitting without a jury.

An issue of law was submitted upon the pleadings and a stipulation by the parties. The court entered its judgment in favor of the plaintiffs and the defendant appeals.

The plaintiffs here contend that defendant's appeal should not be considered on the record because the defendant "having filed no objections to the findings of the trial court, and having requested no other or different findings, its appeal raises no question for consideration by the supreme court." Citing *Howard v. Klamath County,* 188 Or 205, 215 P2d 362, which case cites the ruling set forth and contended for by plaintiffs in *Consolidated Freightways, Inc. v. West Coast Fast Freight, Inc.,* 188 Or 117, 212 P2d 1075, 214 P2d 475.

In each of the above cases it was held that, where an action is tried to the court without a jury, the question of the failure of the court to make *findings of fact* believed proper by the appealing party, or the sufficiency of the evidence to support the *findings of fact* made by the court, must, in each instance, by proper proceedings be first brought to the attention of that court before they will be considered on appeal.

■ The above rule of law does not apply to the matter before us as the facts are not controverted by the parties; no findings of fact were or are required but only the application of the law to the admitted facts. Plaintiffs' objection to a hearing on the merits is therefore overruled.

The facts are that on November 8, 1949, the plaintiffs, as vendors, and the defendant, as purchaser, entered into a contract of sale and purchase of real and personal property, which contract provided in paragraph 18 as follows:

"Possession of the assets to be sold hereunder shall be delivered to Weyerhaeuser at the close of business on November 30, 1948. *All current taxes,* current special assessments, insurance premiums and other expenses customarily prorated in transactions of this kind shall be prorated as of the time of closing. In the case of real estate taxes for the fiscal year 1948-1949, assessed January 1, 1948, the amount of such taxes shall be prorated 11/12ths to Ewauna and 1/12th to Weyerhaeuser. All operations of the properties to be sold for the period prior to the time of closing shall be for the account of the parties of the second part and all operations after that time shall be for the account of Weyerhaeuser." (Emphasis ours.)

It is to be noted, in accordance with the above-quoted portion of the contract, that the plaintiffs were required to pay 11/12ths of the real property tax and the defendant 1/12th. This, presumably, to grant to the defendant an additional concession relative to the real property taxes, for, where no agreement is made between the parties, the statute provides for the prorating of real property taxes with reference to the fiscal year, which is from July 1 to June 30 in each year. § 110-814, OCLA, as amended by § 24, ch 440, Oregon

Laws 1941. There is no similar statute regarding personal property taxes.

All of the terms of the contract were carried out, except plaintiffs have paid all of the personal property taxes assessed and levied in the year 1948 and now claim that, under the terms of the agreement as set out in paragraph 18, they are entitled to be reimbursed by the defendant for 7/12ths of that amount, while it is the contention of the defendant that under the terms of the said contract, the plaintiffs are entitled to recover only 1/12th of the total personal property taxes paid.

The question for determination is, what is meant by the use of the words "current taxes"? By determining this, we will have a starting date from which the taxes may be prorated to the date the proration is to terminate, which was fixed by the parties as the last day in November, 1948.

It is the plaintiffs' contention that current personal property taxes are the taxes for the fiscal year commencing on June 1, 1948, and terminating on May 31, 1949.

The defendant contends that the current personal property taxes are computed on a tax year for personal property, which coincides with the assessment date and commences on the first day of January, 1948, and terminates on December 31 of that same year.

Prior to 1941, personal property was assessed as of March 1 in each year. § 110-101, OCLA. The amount of money necessary for the operation of the taxing unit, and the levy to be made to raise this amount, were determined and recorded by the county court in November of each year. §§ 110-701, 110-702, OCLA. The first payment of taxes became due on or before

March 15, but were not delinquent until December 15 of the year following the assessment and levy. § 110-823, OCLA.

The lien of the tax upon the personal property assessed in November related back and attached to the personal property assessed as of March 1 in that same year, March 1 being spoken of as the "tax day," and the taxes became a lien on "all the personal property of the person assessed from and including such tax day until paid, and no sale or transfer of any such personal property shall in any way affect the lien for such taxes thereon." § 110-829, OCLA.

Subsequently, and in 1941, these sections were amended and both personal and real property were assessed as of January 1 in each year. The amount of money to be raised and the levy to be made to raise this amount were determined in July of each year. The taxes levied and charged were payable in quarterly installments, the first payment to be made on or before the 15th day of November in the year assessed and levied, the second quarter on or before the 15th day of February, the third quarter on or before the 15th day of May, and the fourth quarter on or before the 15th day of August, the last three payment dates being in the following year, and providing that "all taxes on personal property shall become delinquent whenever any quarter thereof  *  *  *  shall not have been paid on or before its due date.  *  *  *" Oregon Laws 1941, ch 440, § 26. The taxes on the personal property became a lien as of January 1 of

"the year of assessment until paid, and no sale or transfer of such personal property or any part thereof shall in any way affect such lien.  *  *  * Such liens shall have priority to and be fully satisfied before any and every judgment, mortgage or

other lien or claim whatsoever, except the lien for taxes for a subsequent year * * *." § 110-829, OCLA, as amended by ch 357, Oregon Laws 1945.

The local budget law of this state requires that an estimate shall first be made of the total amount of money proposed to be expended during the fiscal year next ensuing, § 110-1203, OCLA, and § 110-1202, OCLA, defines a fiscal year as follows:

> "The words 'fiscal year' mean the calendar year ending on the thirty-first day of December, or any period of twelve months ending during the calendar year on any day of any month other than December."

Under this provision it was left for each taxing unit to determine its own fiscal year. However, by § 30 of chapter 440, Oregon Laws 1941, the fiscal year for all taxing units, subsequent to the year 1942, was fixed and determined as commencing on the first day of July and closing on the 30th day of June, so that it is now determined that the fiscal year for each taxing unit commences and closes as above set out.

" 'Fiscal year' is defined as "the year by or for which accounts are reckoned, or the year between one annual time of settlement or balancing of accounts and another." 17 Words and Phrases, Perm ed, Fiscal year. And had the parties spoken of the fiscal year, this matter would be of easy determination. However, they used the term "current taxes." "Current" is defined by Webster's New International Dictionary, 2d ed, as "Open or running, as accounts."

At the time of plaintiffs delivering possession to the defendant, there was owing the entire tax, subject only to the privilege of paying the tax in quarterly installments. The personal property, which was being

transferred, stood liable for the full amount of taxes for the fiscal year from the date that the lien attached on January 1 of that year.

In the case of *Broadway- Madison Corp. v. Fisher,* 164 Or 401, 405, 102 P2d 194, speaking of accrual of taxes, we said:

"The accrual of the tax occurs on the date when there arises a liability to pay such tax and not when the mechanics of computing the amount of the tax have been completed, or when the tax is due and payable. When the amount of the tax is fixed, it relates back to the time the lien attached. As stated in Logan v. Luukinen et al., 113 Or. 52, 231 P. 184:

" 'The rule supported by the authorities is that, when the statute declares a lien from a certain day, the lien is an encumbrance, although the amount of the tax may not yet be determined or collectible. When determined, the lien dates by relation from the date fixed by the statute.' "

That the liability of the personal property for taxes is fixed and determined as of January 1 in each year, there can be no question. *Henderson v. State Tax Commission,* 182 Or 519, 188 P2d 630.

It is apparent to us that the parties, in speaking of current taxes, were speaking of the liability of the property for the payment of the taxes then attached to the personal property being conveyed and not of the opening or closing of accounts by a municipal corporation.

■ Property is assessed only once for each tax year, and we hold that the tax year for personal property commences with the first day of January and terminates on the 31st day of December in each year. Although, in fact, the levy of the tax is not made until the month of July, the assessment is completed and

the tax is regarded as assessed on the first day of January of that same year and the property becomes liable for the tax of that tax year, for, on the following year as of January 1, a different valuation may be made with a different rate of taxation. *J. L. Hammett Co. v. Alfred Peats Co.*, 217 Mass 520, 105 NE 370, 371.

Our view of the tax year as commencing on January 1 and terminating on December 31 is confirmed by chapter 586, § 30, Oregon Laws 1951, which reads as follows:

"This Act shall be given effect retroactively to include the tax year commencing on, and the assessment date of, January 1, 1951."

The legislative meaning gathered from a subsequent statute in pari materia often amounts to a legislative declaration of its meaning and governs the construction of the former statute. 50 Am Jur 328, Statutes, § 337.

For the above reasons this cause is reversed with instructions to enter judgment as prayed for by the defendant.